# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Vision Management Group, LLC, et al.,

        Plaintiffs,

        -vs-

Constant Aviation, LLC,

        Defendant.

Case No. 1:25cv00052

JUDGE PAMELA A. BARKER

MEMORANDUM OPINION & ORDER

Currently pending is Defendant Constant Aviation, LLC's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 9.)  Plaintiffs Vision Management Group, LLC, MakGab Holdings LLC, and Anthony Fiorillo filed a Brief in Opposition on March 13, 2025, to which Defendant replied on March 21, 2025.  (Doc. Nos. 10, 11.)  For the following reasons, Defendant's Motion to Dismiss (Doc. No. 9) is GRANTED.

## I.    Factual Allegations[1]

Defendant Constant Aviation, LLC (hereinafter "Defendant" or "Constant Aviation") provides aircraft inspection and maintenance services.  (Doc. No. 1 at ¶ 3.)  Plaintiffs allege that, on December 6, 2021, "Plaintiffs retained Defendant to perform inspection and repair services on a 1997 Cessna Citation X, MSN 750-0018, pursuant to a Contract to Purchase and associated warranties."

---

[1] In setting forth the facts, the Court considers the factual allegations in the Complaint as well as the Exhibits attached to the Complaint, including the parties' Inspection Contract (Doc. No. 1-1), inspection and repair records from January 2023 (Doc. No. 1-2) and Plaintiffs' July 5, 2024 Demand Letter (Doc. No. 1-3).  *See Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) (noting that, in ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").  *See also Brent v. Wayne County Dep't of Human Services,* 901 F.3d 656, 694 (6th Cir. 2018).

(*Id*. at ¶ 7.)  The parties' Contract (hereinafter "Inspection Contract") is attached to the Complaint as Exhibit A.  (Doc. No. 1-1.)  The Inspection Contract is between Plaintiff Vision Management LLC (hereinafter "Vision Management") and Constant Aviation, and is signed by Plaintiff Anthony Fiorillo in his capacity as President of Vision Management.[2]  (*Id.* at PageID#s 10, 24.)  Plaintiff MakGab Holdings, LLC (hereinafter "MakGab") is not a signatory to the Inspection Contract.  (Doc. No. 1-1.)

Plaintiffs allege that Constant Aviation "warranted that all inspection and repair work would adhere to applicable industry standards and that any defects would be remedied."  (Doc. No. 1 at ¶ 8.)  The Inspection Contract provides that Constant Aviation agrees to a "limited warranty," as follows:

> WARRANTY AND WARRANTY PERIOD: Constant Aviation warrants its goods and services supplied per this proposal for Avionics, Paint, Interior, and Maintenance to be free from defects in material and workmanship for the earlier of 250 hours of aircraft operation or two years after completion of the work. Used or customer-supplied equipment will carry no warranty unless specified in the work scope above. Complete sand and paint work scopes will carry no warranty.

(Doc. No. 1-1 at PageID# 22.)  To assert a warranty claim, "the customer shall notify Constant Aviation in writing within thirty (30) days after the customer has actual or constructive notice of such alleged warranty clam."  (*Id*. at PageID# 21.)  The Inspection Contract provides that "[a]ll claims shall include the following information: a.  Serial number of the aircraft; b. Date services were performed; and c. Detailed explanation of the nature of the claim, and the date of detection."  (*Id*.)

The Inspection Contract provides that Constant Aviation has the right to inspect and repair any defective or nonconforming work, as follows:

---

[2] Although the Complaint alleges that the Inspection Contract was executed on December 6, 2021, the Contract itself is signed by Plaintiff Fiorillo in his capacity as President of Vision Management on December 9, 2021.  (*Id.* at PageID# 24.)

2

INSPECTION: Constant Aviation shall have a full and complete opportunity to inspect any alleged defect or nonconforming work, and review any records concerning the alleged defect prior to performance of any repairs. The customer agrees to deliver its aircraft to Constant Aviation's closest service facility at the customer's cost, in order to facilitate such inspection.

REPAIRS: If Constant Aviation determines that the defective or nonconforming work is shown to be due to a breach of the above warranty, and not due to any extraneous cause, including but not limited to misuse by the customer or any third party, failure to perform recommended maintenance, or effects of the environment (wind, water, corrosion, etc.), then Constant Aviation shall repair the defective work.  If Constant Aviation determines that the customer has failed to meet its obligations set forth in this quote or otherwise with respect to proper maintenance of the customer's aircraft, then the warranty set forth above will not apply and, with prior notice to the customer, such repair work will be completed by Constant Aviation at the customer's cost.

(*Id*. at PageID# 22.)  The Inspection Contract also provides that:

DAMAGE: In the event Constant Aviation damages customer's property, including the aircraft, customer's sole and exclusive remedy, and Constant Aviation's sole and exclusive liability, is limited to the repair or replacement of the damaged portion of the property, at Constant Aviation's sole option.  In no event shall Constant Aviation be liable for any special, incidental, consequential, or punitive damages, including, but not limited to, loss of profits, loss of goodwill, loss of use, loss of time, inconvenience, or diminution in value.

(*Id.* at PageID# 21.)  Lastly, the parties agreed that the Inspection Contract "shall constitute a binding agreement between Constant Aviation and the customer, which shall be construed under and enforced in accordance with the laws of the State of Ohio, without regard to principles of conflicts of laws." (*Id*. at PageID# 22.)

Plaintiffs allege that they paid Constant Aviation for pre-purchase evaluations and subsequent inspection services totaling $94,315.44.  (Doc. No. 1 at ¶ 9.)  Plaintiffs allege that they later "discovered significant corrosion on critical aircraft components during inspections and repairs." (*Id*. at ¶ 10.)  There is a conflict between the allegations in the Complaint and the Exhibits to the

3

Complaint as to when this corrosion was discovered.  In the Complaint, Plaintiffs allege that they discovered the corrosion "on or around January 11, 2024, and January 18, 2023."  (*Id*. at ¶ 10.)  In a demand letter attached as an Exhibit to the Complaint, however, Plaintiffs state that they discovered the corrosion during "subsequent inspections and repairs conducted and completed in or around September 2022 and January 2023."  (Doc. No. 1-3 at PageID# 58.)

Plaintiffs allege that "[t]he corrosion constitutes a latent defect that should have been identified by Defendant during its initial inspections."  (Doc. No. 1 at ¶ 11.)  They allege that they "reasonably relied on Defendant's repeated assurances that the aircraft's condition was airworthy and free of significant defects" and that "[t]hese assurances were integral to Plaintiffs' decision to proceed with the purchase and subsequent repairs."  (*Id*. at ¶ 13.)  According to Plaintiffs, "Defendant either failed to detect the corrosion due to negligent inspection practices and/or caused the corrosion due to substandard workmanship."  (*Id*. at ¶ 11.)  Additionally, "Defendant failed to conduct critical tests during the pre-purchase evaluation that would have identified corrosion in high-risk areas of the aircraft, including, but not limited to, fuel tanks, landing gear components, and the airframe."  (*Id*. at ¶ 14.)

Plaintiffs incurred "substantial expenses totaling $176,501.43 for repairs and inspections necessary to remediate the corrosion and an additional $123,000.00 for operational disruptions caused by Defendant's negligence."  (*Id*. at ¶ 12.)  Plaintiffs allege that "[s]ubsequent inspections revealed that the corrosion had existed for a significant period and was not new, directly contradicting Defendant's representations to Plaintiffs regarding the thoroughness of its inspection and evaluation process."  (*Id*. at ¶ 15.)  "Defendant's negligence in identifying latent defects created substantial safety risks and led to costly and time-consuming repairs that disrupted Plaintiffs' business

4

operations." (*Id.* at ¶ 16.)  In addition, "Defendant failed to adhere to Federal Aviation Administration ('FAA') standards and guidelines for inspections, further evidencing its negligent practices and breach of professional duties." (*Id.* at ¶ 17.)

On July 8, 2024, Plaintiffs sent Constant Aviation a demand letter detailing their claims and damages "related to Defendant's negligent performance and breach of contract." (*Id.* at ¶ 18.)  Copies of the Demand Letter and its attachments are attached to the Complaint as Exhibit C.  (Doc. No. 1-3.)  Plaintiffs allege that "Defendant's response to Plaintiffs' claims attempted to disclaim liability by relying on limitations in the warranty, but Ohio law recognizes that such disclaimers do not absolve liability for latent defects that render a product unfit for its intended use." (*Id.* at ¶ 19.)  As a result of Constant Aviation's "actions and/or inactions," Plaintiffs allege that they have "suffered financial losses and loss of business opportunities due to the extended downtime of the aircraft and the safety concerns arising from Defendant's failures." (*Id.* at ¶ 20.)

## II.    Procedural History

On January 11, 2025, Plaintiffs Vision Management, Fiorillo, and MakGab filed a Complaint in this Court against Constant Aviation, asserting the following three claims: (1) negligence and gross negligence (Count I); (2) breach of contract (Count II); and (3) unjust enrichment (Count III).[3]  (Doc. No. 1.)

---

[3] In order to ensure that it has diversity jurisdiction over the instant matter, this Court issued a Show Cause Order on January 13, 2025, directing Plaintiff to identify (1) the citizenship of all of the members (and sub-members, if any) of Vision Management, MakGab Holdings, and Constant Aviation; and (2) Fiorillo's state of citizenship (as opposed to residency).  (Doc. No. 6.)  On January 27, 2025, Plaintiffs filed a Supplement (Doc. No. 7) providing the requested information, which indicated, in sum, that Plaintiffs are each citizens of Florida and Constant Aviation is a citizen of Ohio.  (*Id.*)  On January 29, 2025, the Court issued an Order that "[b]ased upon the information contained in and attached to Plaintiffs' [Supplement], the Court is satisfied, at this time, that there is complete diversity of citizenship."  *See* Non-Doc Order dated Jan. 29, 2025.

On February 11, 2025, Constant Aviation filed a Motion to Dismiss all of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6).  (Doc. No. 9.)  Plaintiffs filed a Brief in Opposition on March 13, 2025, to which Constant Aviation replied on March 21, 2025.  (Doc. Nos. 10, 11.)

## III.     Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).  For purposes of both Rule 12(b)(6) and Rule 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

6

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV.    Analysis

In its Motion, Constant Aviation seeks dismissal of Plaintiffs' claims for breach of contract, negligence/gross negligence, and unjust enrichment. (Doc. No. 9.) The Court will address the parties' arguments with respect to each of these claims separately, below.

### A.    Breach of Contract (Count II)

In Count II, Plaintiffs allege that "the Inspection Contract between Plaintiffs and Defendant obligated Defendant to perform its services in accordance with the agreed-upon terms and industry standards." (Doc. No. 1 at ¶ 27.) Plaintiffs allege that they "have fully complied with the Inspection Contract" and that "Defendant breached the Inspection Contract by including, but not limited to, failing to deliver the contracted-for services free of defects, not notifying the Plaintiff of any defects, and by failing to adhere to the required industry standards." (*Id*. at ¶¶ 28, 29.) Plaintiffs allege that, as a direct and proximate result of Defendant's breach, they "suffered damages, including: a) Costs for repairs and inspections necessary to remediate the corrosion and other latent defects, totaling

7

$176,501.43; b) Operational disruptions and the resulting loss of business opportunities, totaling $123,000.00; d) Additional costs incurred in obtaining substitute aircraft services during the remediation period; and e) Attorney fees and expenses related to resolving disputes caused by Defendant's breach." (*Id.* at ¶ 30.)

Constant Aviation argues that Plaintiffs' breach of contract claim fails as a matter of law for several reasons. (Doc. No. 9 at PageID#s 184-186.) Constant Aviation first argues that this claim fails with respect to Plaintiffs Fiorillo and MakGab because neither of these Plaintiffs are parties to the Inspection Contract and, therefore, they lack standing to assert a breach of contract claim. (*Id.* at PageID#s 184-185.) Constant Aviation next asserts that, although Vision Management is a party to the Contract, its breach of contract claim fails because the Complaint fails to include sufficient allegations that Vision Management incurred any damages. (*Id.* at PageID#s 185-186.) Lastly, Constant Aviation maintains that, even if Fiorillo and MakGab had standing and Vision Management had sufficiently alleged that it suffered damages, Plaintiffs' breach of contract claim nonetheless fails because Plaintiffs failed to comply with the conditions precedent in the Inspection Contract of notice, inspection, and opportunity to repair. (*Id.* at PageID# 186.)

In response, Plaintiffs do not dispute that neither Fiorillo nor MakGab are signatories to the Inspection Contract. (Doc. No. 10 at PageID#s 195-199.) Plaintiffs maintain, however, that Fiorillo and MakGab nonetheless have standing to assert a breach of contract claim because "Ohio law recognizes that non-signatories may enforce contract terms when they are intended third-party beneficiaries or have suffered direct harm." (*Id.* at PageID# 196.) Plaintiffs argue that they have sufficiently alleged that both Fiorillo and MakGab were intended beneficiaries of the Inspection Contract because they were the primary beneficiaries of that Contract and suffered direct harm as a

result of its alleged breach.  (*Id*.)  Plaintiffs next argue that they have properly alleged that Vision Management incurred damages as a result of Constant Aviation's alleged breach, noting that the Complaint specifically alleges "financial harm, including repair costs, operational delays, and diminished aircraft value."  (*Id*. at PageID# 197.)  Lastly, Plaintiffs argue that they complied with all conditions precedent or were excused from doing so, asserting that they "allege that they notified Defendant of the defects, but Defendant failed to take corrective action."  (*Id*. at PageID# 198.) Plaintiffs maintain that "the contractual provision requiring Defendant be given an opportunity to inspect and repair does not absolve Defendant of liability where its breach was material and prior to any required notice."  (*Id*.)

The Court addresses the parties' arguments in turn, below.

### 1.      Plaintiffs Fiorillo and MakGab

As noted *supra*, the Complaint in the instant case provides that "Plaintiffs" (plural) entered into the Inspection Contract with Constant Aviation.  (Doc. No. 1 at ¶¶ 7, 9, 28) (alleging that "Plaintiffs*"* retained Defendant to perform inspection and repair services, "Plaintiffs" paid for prepurchase evaluations and subsequent inspection services, and "Plaintiffs" fully complied with the Inspection Contract.) Ordinarily, a court "must accept all well-pleaded factual allegations [in a complaint] as true." *Benzon v. Morgan Stanley Distribs., Inc*., 420 F.3d 598, 602 (6th Cir. 2005) (quoting *Inge v. Rock Fin. Corp*., 281 F.3d 613, 619 (6th Cir. 2002)).  *See also Jones v. Select Portfolio Servicing, Inc*., 672 Fed. Appx. 526, 531 (6th Cir. 2016).  However, the Sixth Circuit has held that when a "written instrument plainly contradicts the pleadings," the instrument "trumps the allegations." *Creelgroup, Inc. v. NGS Am., Inc.,* 518 Fed. Appx. 343, 347 (6th Cir. 2013) (quoting *Williams v. CitiMortgage, Inc*., 498 Fed. Appx. 532, 536 (6th Cir. 2012)).  *See also Cates v. Crystal*

*Clear Technologies, LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (same); *Nolan v. Detroit Edison Company*, 991 F.3d 697, 707 (6th Cir. 2021).

Here, the Inspection Contract itself clearly indicates (and Plaintiffs do not dispute) that neither MakGab nor Fiorillo (in his personal capacity) are signatories to that Contract. Courts, including the Sixth Circuit, have held that non-signatories to a contract lack standing to assert a claim for breach of contract. *See, e.g., Creelgroup, Inc*., 518 Fed. Appx. at 347 ("A close reading of the contract reveals that Creelgroup was never a party to the contract. *** As a non-party to the agreement, Creelgroup cannot state a claim for relief."); *White v. Adena Health System*, 2018 WL 3377087 at * 9 (S.D. Ohio July 11, 2018) (dismissing a claim for breach of a non-disparagement agreement under Rule 12(b)(6) where defendant was not a party to that agreement); *DiPaolo v. Princeton Search, LLC*, 2014 WL 517476 at * 2-3 (N.D. Ohio Feb. 6, 2014) (dismissing a counterclaim for lack of standing on a 12(b)(6) motion where the contract was not assigned to defendant but, rather, to a different party); *Beard v. New York Live Ins. & Annuity Corp.,* 2013 WL 4678105 at * 7 (Ohio App. 10th Dist. Aug. 27, 2013) (dismissing a breach of claim for lack of standing where plaintiff was not named in the contract attached to his pleading).

Plaintiffs nonetheless assert that Constant Aviation is not entitled to dismissal of this claim because "Plaintiffs have sufficiently alleged that MakGab and Fiorillo were intended beneficiaries [of the Inspection Contract] and incurred financial losses due to Defendant's breach." (Doc. No. 10 at PageID# 196.) Constant Aviation disagrees, arguing that "the contract at issue in this case ... gives no indication that it was intended to benefit either MakGab or Fiorillo." (Doc. No. 11 at PageID# 206.) Regarding MakGab, Constant Aviation asserts that the fact that MakGab allegedly incurred expenses to repair the aircraft does not make it an intended third party beneficiary, noting that "[t]here

10

are no facts alleged in the Complaint to support a conclusion that Constant was even aware of MakGab's existence at the time it entered into the agreement with Vision Management." (*Id.*) Regarding Fiorillo, Constant Aviation argues that "the mere fact that [Fiorillo] signed the [Inspection Contract], or that he owned Vision Management, does not make him an intended beneficiary of the agreement." (*Id.* at PageID# 207.)

As noted above, pursuant to the Inspection Contract, the instant dispute is governed by Ohio law. (Doc. No. 1-1 at PageID# 22.) Under Ohio law, it is well established that only intended third-party beneficiaries may assert rights to contracts to which they are not a party. *See TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 638 N.E.2d 572, 577 (Ohio 1994); *Cook v. Ohio National Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (applying Ohio law); *Torrance v. Rom*, 157 N.E.3d 172, 184 (Ohio App. 8th Dist. 2020) ("Only an intended third-party beneficiary has enforceable rights under a contract to which he or she is not a party; an incidental third-party beneficiary does not."); *Sony Elec., Inc. v. Grass Valley Grp., Inc.*, 2002 WL 440749 at *3 (Ohio App. 1st Dist. Mar. 22, 2002). Applying Ohio law, "[t]he Sixth Circuit is in accord" that only an intended (rather than incidental) third-party beneficiary has enforceable contract rights. *Cook*, 961 F.3d at 855. *See also Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980) (applying Ohio law, finding that third-party beneficiary has enforceable rights under a contract only if he is an "intended beneficiary" as opposed to an "incidental beneficiary."); *Sagraves v. Lab One, Inc.*, 316 Fed. Appx 366, 371 (6th Cir. 2008) (same).

The Ohio Supreme Court clarified the distinction between intended third-party beneficiaries and incidental third-party beneficiaries by adopting the Restatement (Second) of Contracts, § 302 which provides:

11

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Hill v. Sonitrol of SW Ohio, Inc.*, 521 N.E.2d 780, 784 (Ohio 1988). *See also Cook*, 961 F.3d at 855. The Ohio Supreme Court also quoted with approval comment e to Section 302 which provides, in relevant part, that: "Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created." *Hill*, 521 N.E.2d at 784. *See also Norfolk*, 641 F.2d at 1208 ("[T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary.").

In sum, for a third party to be an intended beneficiary of a contract under Ohio law, "there must be evidence that the contract was intended to directly benefit that third party." *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011). *See also Torrance*, 157 N.E.3d at 184. "Generally, the parties' intention to benefit a third party will be found in the language of the agreement." *Huff*, 957 N.E.2d at 7, 8-9 ("[F]or an injured third party to qualify as an intended third-party beneficiary under a written contract, the contract must indicate an intention to benefit that third party."). *See also Torrance*, 157 N.E.3d at 185. "Although there is no requirement that the intended third-party beneficiary be expressly identified in the contract, the contract must be shown to have been made and entered into with the intent to benefit that individual." *Torrance*, 157 N.E.3d at 185 (citing *Heintschel*

12

*v. Montgomery*, 2010 WL 5550662 at * 5 (Ohio App. 6th Dist. Dec. 30, 2010) and *Bungard v. Dept. of Job & Family Servs.*, 2007 WL 4171105 at * 6 (Ohio App. 10th Dist. Nov. 27, 2007)).

Here, Plaintiffs do not set forth any allegations in the Complaint that either MakGab or Fiorillo are intended third-party beneficiaries to the Inspection Contract.[4] Nor does the Complaint contain any allegation(s) that the Inspection Contract was intended to benefit either MakGab or Fiorillo in his personal capacity. Under similar circumstances, courts have found dismissal to be warranted on this basis alone. *See, e.g., Breen v Group Management Services, Inc.*, 2022 WL 3096546 at * 3 (Ohio App. 8th Dist. Aug. 4, 2022) (affirming district court's dismissal under Rule 12(b)(6) for lack of standing because: "The complaint does not allege anywhere that Breen individually, or as trustee, is an intended third-party beneficiary of the Contract. Nor does the complaint allege that Breen individually, or as a trustee, was intended by GMS to have 'the benefit of the promised performance.'").

Even setting aside these pleading deficiencies and looking to the Inspection Contract itself, the Court finds that Plaintiffs have failed to demonstrate that either MakGab or Fiorillo are intended third-party beneficiaries. Plaintiffs do not direct this Court's attention to any provision of the Inspection Contract that indicates an intention to benefit either MakGab or Fiorillo in his personal capacity. And, upon its own careful review, this Court finds no terms or conditions in the Inspection Contract that contain language establishing (or even suggesting) such an intention. Notably, MakGab

---

[4] Citing Paragraphs 12 -14 of the Complaint, Plaintiffs assert (summarily) that they have "sufficiently alleged that MakGab and Fiorillo were intended beneficiaries and incurred financial losses due to Defendant's breach." (Doc. No. 10 at PageID# 196.) The Court disagrees. Upon careful review, the Court finds that Paragraphs 12 through 14 of the Complaint do not in any way allege that MakGab or Fiorillo were intended third-party beneficiaries to the Inspection Contract. Nor do Paragraphs 12 through 14 allege that the Inspection Contract was intended to benefit MakGab and/or Fiorillo or recite any specific provision in that Contract that would allegedly indicate such an intention. Thus, Plaintiffs' assertion that these Paragraphs allege that MakGab and Fiorillo "were intended beneficiaries" is not supported by the record and is without merit.

is not mentioned anywhere in the Inspection Contract nor is there any language in the Inspection Contract suggesting that Constant Aviation was aware of MakGab, assumed any contractual duty to MakGab, or intended to benefit MakGab.

Likewise, Plaintiff has not directed this Court's attention to (and this Court has not found) any language or provisions in the Inspection Contract that indicate an intention to benefit Fiorillo in his personal capacity. While the Court acknowledges that Fiorillo signed the Inspection Contract, the Contract itself clearly indicates that he did so in his capacity as President of Vision Management. (Doc. No. 1-1 at PageID# 24.) Indeed, the Inspection Contract expressly provides that it "can only be accepted by an authorized officer of the company or a company representative who has the capacity indicated and is authorized to execute, deliver, and bind the customer to this agreement." (*Id.*) Just below this provision, Fiorillo signed his name to the Inspection Contract and identified his title as "Pres[ident]." (*Id.*) The Court finds that this language indicates the Inspection Contract was between Constant Aviation and Vision Management and, further, that it does not indicate any intention to benefit Fiorillo in his personal capacity.

Plaintiffs' arguments to the contrary are without merit. Plaintiffs first suggest that they are intended third-party beneficiaries because they "suffered direct harm" and "incurred financial losses" due to Constant Aviation's alleged breach. (Doc. No. 10 at PageID# 196.) However, allegations that MakGab and Fiorillo were harmed or incurred financial losses as a result of Constant Aviation's alleged breach of the Inspection Contract are not sufficient, standing alone, to allege that they are intended third-party beneficiaries to that Contract. *See Torrance*, 157 N.E.3d at 185 (finding that plaintiff was not an intended third-party beneficiary "simply because he was financially affected by" defendant's breach of its contract with plaintiff's company). Rather, and as discussed above, to be

14

considered intended third-party beneficiaries, MakGab and Fiorillo must sufficiently allege that the Inspection Contract was entered into with the intention of benefitting them.  MakGab and Fiorillo have failed to do so.[5]

Lastly, Plaintiffs argue generally that dismissal is inappropriate because "whether a contract was 'directly or primarily' for a third party's benefit is a factual question that requires further discovery." (Doc. No. 10 at PageID#s 196-197.)  In support, Plaintiffs cite the Sixth Circuit's opinion in *Cook, supra* for the proposition that the determination of whether intended beneficiaries have standing to enforce a contract "is a fact intensive inquiry."  (*Id.*)  The Sixth Circuit, however, said no such thing in *Cook.*  Rather, in that case, the Sixth Circuit found that "to determine whether plaintiff is an incidental or intended third-party beneficiary, we look to the terms of the Selling Agreement." *Cook*, 961 F.3d at 856.  After analyzing several specific provisions of that Agreement, the Sixth Circuit found that the plaintiff was not an intended third-party beneficiary and affirmed the district court's dismissal under Rule 12(b)(6).[6]  *Id.* at 854-855, 858-859.  Plaintiffs' argument that dismissal is inappropriate at the Rule 12(b)(6) stage is, therefore, without merit and rejected. [7]

---

[5] Plaintiffs maintain that "¶¶ 2-4" of the Inspection Contract "detail[] the contractual obligations undertaken by Defendant, which directly impacted MakGab and Fiorillo." (Doc. No. 10 at PageID# 196.)  However, there are no Paragraphs 2, 3, or 4 in the Inspection Contract attached to the Complaint. (Doc. No. 1-1.)  Thus, it is unclear what specific contractual obligations or provisions Plaintiffs are referring to.  Nor do Plaintiffs otherwise direct this Court's attention to any provision in the Inspection Contract that indicates an intention to benefit either MakGab or Fiorillo.

[6] The Court notes that Plaintiffs provide an inaccurate citation to *Cook*, citing it as 960 F.3d 856 (6th Cir. 2020).  In fact, the correct citation is 961 F.3d 850 (6th Cir. 2020).  In addition, Plaintiffs pinpoint p. 862 of the *Cook* decision as holding that a determination of whether a third-party beneficiary has standing to enforce a contract is a "fact intensive inquiry." (Doc. No. 10 at PageID# 197.)  However, there is no page 862 in the *Cook* decision.  Counsel for Plaintiffs are reminded and cautioned that they have an obligation to ensure that any filings in this Court include accurate case citations, both in terms of the content of the cited decision and the citation itself.

[7] Plaintiffs also cite cases from the Ninth Circuit Court of Appeals and the District Court for the District of Massachusetts. (Doc. No. 10 at PageID# 197.)  These out-of-Circuit cases, however, are not binding on this Court, particularly where they conflict with Sixth Circuit authority.

15

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiffs MakGab and Fiorillo lack standing to assert a breach of contract claim against Constant Aviation because they are neither signatories to the Contract nor intended third-party beneficiaries.  MakGab and Fiorillo's breach of contract claims against Constant Aviation are, therefore, dismissed.

### 2.    Vision Management

Constant Aviation next argues that "Vision Management is the only party to the [Inspection] Contract with Constant, but Vision Management has not and cannot allege an essential element of a breach of contract claim—damages."  (Doc. No. 9 at PageID# 185.)  In this regard, Constant Aviation asks this Court to disregard the allegation in the Complaint that "*Plaintiffs* incurred substantial expenses ... caused by Defendant's negligence."  (Doc. No. 1 at ¶ 12) (emphasis added) because it conflicts with the January 2023 Invoices attached to the Complaint.  (Doc. No. 9 at PageID# 186.)  Specifically, Constant Aviation asserts that these Invoices reflect that payments made to conduct inspections and repairs after the discovery of corrosion were made solely by MakGab – and not by Vision Management.  (*Id*.)(citing Doc. No. 1-2 at PageID#s 34-49.)

In their Brief in Opposition, Plaintiffs do not challenge the legal principle that this Court should disregard allegations in the Complaint that are contradicted by its Exhibits.  (Doc. No. 10.)  Moreover, Plaintiffs fail to address Constant Aviation's argument that the allegation that Vision Management suffered damages is directly contradicted by the January 2023 Invoices, which Defendant maintains show that it was MakGab (and only MakGab) that paid for the subsequent inspection and repairs of the aircraft at issue.[8]

---

[8] Although not noted by either Plaintiffs or Defendant, the Court observes that some of the January 2023 Invoices are billed to both MakGab Holdings and "Tony Furillo," which the Court presumes is meant to refer to Plaintiff Anthony Fiorillo.  (Doc. No. 1-2 at PageID#s 50-52.)

16

However, for the following reasons, the Court finds that Plaintiffs have nonetheless sufficiently alleged that Vision Management (the only signatory to the Inspection Contract) incurred damages as a result of Constant Aviation's alleged breach of contract. Although the January 2023 Invoices show that MakGab (and in some instances Fiorillo) paid for inspection and repair costs after the discovery of corrosion, Plaintiffs also allege that they suffered other types of damages as a result of Constant Aviation's alleged breach, including "operational disruptions and the result of loss of business opportunities, totaling $123,000" and "additional costs incurred in obtaining substitute aircraft services during the remediation period." (Doc. No. 1 at ¶ 30.) The Complaint adequately alleges that Vision Management suffered these damages and Constant Aviation does not direct this Court's attention to anything in the Exhibits attached to the Complaint that directly contradict this allegation.

Accordingly, the Court finds that Plaintiffs have sufficiently alleged both that Vision Management is a signatory to the Inspection Contract and that it suffered damages as a result of Constant Aviation's alleged breach.

### 3. Failure to Satisfy Conditions Precedent

Lastly, Constant Aviation argues that Plaintiffs' breach of contract claim fails because Vision Management failed to comply with the notice, inspection, and opportunity to repair requirements in the Inspection Contract. (Doc. No. 9 at PageID# 186.) Specifically, Constant Aviation argues that "[b]ecause Plaintiffs have not (and cannot) allege that they gave timely notice to Constant, or delivered the aircraft to Constant for inspection, or allowed Constant to repair the aircraft, Plaintiffs have not, and cannot, allege facts showing that they fulfilled all conditions precedent to recovery in this case." (*Id.*)

17

In response, Plaintiffs argue that "the Contract's warranty provisions do not absolve liability where it failed to properly perform its obligations in the first instance," particularly where the "defect at issue was latent and not immediately discoverable." (Doc. No. 10 at PageID# 195.)  Plaintiffs maintain that they "allege that they notified Defendant of the defects, but Defendant failed to take corrective action" and argue that "a condition does not require an act that would be futile." (*Id.* at PageID# 198.)  Plaintiffs further assert that "the contractual provision requiring Defendant be given an opportunity to inspect and repair does not absolve Defendant of liability where its breach was material and prior to any required notice." (*Id.*)  Thus, Plaintiffs argue that Constant Aviation's Motion to Dismiss should be denied because Plaintiffs either fulfilled, or were excused from fulfilling, the notice, inspection, and repair provisions in the Inspection Contract. (*Id.*)

In its Reply Brief, Constant Aviation notes that the Complaint itself provides that Plaintiffs did not notify Constant Aviation of the alleged defects until July 8, 2024, which is "21 months after Plaintiffs allegedly discovered significant corrosion on critical aircraft components." (Doc. No. 11 at PageID# 208.)  Constant Aviation notes that, under the express terms of the Inspection Contract, Vision Management was required to provide notice within 30 days of actual or constructive notice of a warranty claim. (*Id.*)  Constant Aviation further asserts that, by the time it was notified by Plaintiffs of the alleged warranty claim, MakGab had already incurred the expense to have the aircraft repaired, in violation of the inspection and repair provisions of the Inspection Contract. (*Id.*)  Thus, Constant Aviation maintains that Plaintiffs have not alleged that Vision Management fulfilled the notice, inspection, and/or repair provisions of the Inspection Contract. (*Id.*)  Constant Aviation further argues that Vision Management is not excused from complying with these provisions, asserting that "Vision Management cannot ignore the requirements of the contract to give notice and an opportunity to cure,

18

and then claim that it was excused from doing so because Constant did not cure." (*Id*. at PageID# 209.)

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *Asset Mgmt. One LLC v. U.S. Bank Nat'l Ass'n,* 569 Fed. Appx 438, 441 (6th Cir. 2014) (quoting *V&M Star Steel v. Centimark Corp*., 678 F.3d 459, 465 (6th Cir. 2012)). "It is well established under Ohio contract law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach." *Au Rustproofing Center, Inc. v. Gulf Oil Corp*., 755 F.2d 1231, 1237 (6th Cir. 1985) (citing *Bell Brothers v. Robinson*, 5 Ohio App. 454, 458 (Ohio App. 6th Dist. 1916)). Moreover, "a right of action requiring notice as a condition precedent cannot be enforced unless the notice provided for has been given." *Id*. (citing 18 O.Jur.3d Contracts § 210 (1980); 17 Am.Jur.2d Contracts § 356 (1964); 3a A. Corbin, Corbin On Contracts, § 727 (1960)). *See also Lion Federal Credit Union v. WorldPay, LLC*, 2024 WL 1704551 at * 8 (S.D. Ohio April 19, 2024) (noting that "Ohio law does require Lion to comply with all express conditions precedent, such as the MSA's provision requiring Lion to give Worldpay notice of and an opportunity to cure any alleged breaches"), *supplemented on other grounds by*, 2024 WL 2701700 (S.D. Ohio May 24, 2024)).

As noted above, here, the Inspection Contract expressly provides that "[t]o assert a warranty claim, the customer [i.e., Vision Management] shall notify Constant Aviation in writing within thirty (30) days after the customer has actual or constructive notice of such alleged warranty claim." (Doc. No. 1-1 at PageID# 21.) The Inspection Contract further provides that: "Constant Aviation shall have a full and complete opportunity to inspect any alleged defect or nonconforming work, and review any

19

records concerning the alleged defect prior to performance of any repairs." (*Id.* at PageID# 22.) Lastly, the Inspection Contract provides that"[i]f Constant Aviation determines that the defective or nonconforming work is shown to be due to a breach of the above warranty, and not due to any extraneous cause, including but not limited to misuse by the customer or any third party, failure to perform recommended maintenance, or effects of the environment (wind, water, corrosion, etc.), then Constant Aviation shall repair the defective work." (*Id.*)

Plaintiffs do not dispute that the above notice, inspection, and right to repair provisions constitute conditions precedent. Nor do Plaintiffs argue that any of the above provisions are ambiguous or that they are unenforceable because they are unconscionable or otherwise against public policy.  Rather, Plaintiffs assert that they did, in fact, "allege that they notified Defendant of the defects." (Doc. No. 10 at PageID# 198) (citing Doc. No. 1 at ¶¶ 18-19.)  Plaintiffs maintain that, because "Defendant failed to take corrective action" after receiving notice, Vision Management is excused from complying with the inspection and repair provisions of the Inspection Contract on the grounds that it would be futile.  (*Id.*)

The Court finds Plaintiffs' argument to be without merit.  In the Complaint, Plaintiffs allege that "[o]n or about July 8, 2024, [they] sent Defendant a demand letter detailing their claims and damages related to Defendant's negligent performance and breach of contract." (Doc. No. 1 at ¶ 18.) As Constant Aviation correctly notes, however, in the July 2024[9] demand letter, counsel for Plaintiffs expressly states that Plaintiffs "discovered significant corrosion on critical aircraft components during subsequent inspections and repairs conducted and completed in or around September 2022 and

---

[9] While the Complaint provides that Plaintiffs sent their demand letter to Constant on July 8, 2024, the actual demand letter (attached as Exhibit C to the Complaint) is dated July 5, 2024.  *See* Doc. No. 1-3 at PageID# 57.

January 2023." (Doc. No. 1-3 at PageID# 58.) Thus, by Plaintiffs' own acknowledgment, they discovered the alleged corrosion by no later than January 2023 but failed to notify Constant Aviation until July 5, 2024 – over seventeen (17) months later. Clearly, this is well beyond the thirty (30) day notice period set forth in the Inspection Contract. Thus, the Court rejects Plaintiffs' argument that they complied with the Inspection Contract's notice provision.

Relatedly, the Court also rejects Plaintiffs' argument that, because they provided notice and Constant Aviation nonetheless failed to "take corrective action," Plaintiffs were excused from complying with the inspection and repair provisions of the Inspection Contract. The Invoices attached to the Complaint show that MakGab paid for repairs to the aircraft in question in January 2023 (Doc. No. 1-2 at PageID#s 34-53), i.e., well before Plaintiffs notified Constant Aviation of the alleged corrosion in July 2024. Given the fact that Constant Aviation never had any opportunity to inspect and/or repair the alleged corrosion because Plaintiffs unilaterally completed the repairs before providing notice, the Court rejects Plaintiffs' argument that they were excused from the inspection and repair provisions of the Inspection Contract on futility grounds.

Citing *Tatonka Educ. Services, Inc. PBC v. Youngstown Preparatory Acad*., 2023 WL 4085366 (N.D. Ohio June 20, 2023), Plaintiffs next argue (summarily) that "the contractual provisions requiring Defendant be given an opportunity to inspect and repair does not absolve Defendant of liability where its breach was material and prior to any required notice." (Doc. No. 10 at PageID# 198.) For the following reasons, the Court rejects this argument.

In *Tatonka*, the parties entered into a contract, in which plaintiff Tatonka Education Services, Inc. PBC ("Tatonka") agreed to provide financial management and human resource services to defendant Youngstown Preparatory Academy ("YPA"). *Tatonka*, 2023 WL 4085366 at * 1. After

YPA unilaterally terminated the contract, Tatonka filed suit alleging breach of contract and breach of the implied covenant of good faith and fair dealing.  *Id*. at * 2.  YPA then filed counterclaims for (among other things) breach of contract and material breach.  *Id*.  Tatonka moved to dismiss, arguing that YPA's counterclaims failed because YPA failed to perform under the contract.  *Id*.  YPA maintained that it was excused from performance because Tatonka materially breached the contract first.[10]  *Id*.

The district court explained that "Ohio courts have recognized the doctrine of first material breach, which provides that 'a non-breaching party to a contract is excused from complying with conditions of the contract, when the party for whose benefit the condition operates has already materially breached the contract.'" *Id*. at * 3 (quoting *Jackson v. State Farm Fire & Cas. Co*., 461 Fed. Appx 422, 426 (6th Cir. 2012)).  The court further noted as follows:

> It is well-settled in Ohio that a material breach of contract is "a failure to do something that is so *fundamental* to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Price v. KNL Custom Homes, Inc*., 2015-Ohio-436, ¶ 32, 28 N.E.3d 640, 651 (quoting *Marion Fam. YMCA v. Hensel*, 2008-Ohio-4413, ¶ 7, 178 Ohio App. 3d 140, 142–43, 897 N.E.2d 184, 186). To determine whether Tatonka materially breached the amended contract, the Court must consider the following five factors that Ohio has adopted from the Restatement (Second) of Contracts (1981):
>
>> [(1)] the extent to which the injured party will be deprived of the expected benefit, [(2)] the extent to which the injured party can be adequately compensated for the lost benefit, [(3)] the extent to which the breaching party will suffer a forfeiture, [(4)] the likelihood that the breaching party will cure its breach under the circumstances, and [(5)] the extent to which the breaching party has acted with good faith and dealt fairly with the injured party.

---

[10] For example, YPA alleged that Tatonka "failed to make timely payments to the State Employee Retirement System of Ohio, to timely pay utility bills and medical insurance premiums, and to remit unemployment taxes on behalf of YPA, amongst other failures." *Id*.  YPA alleged that these alleged breaches "led to accrued interest charges and/or penalties that YPA is responsible for paying." *Id*.

22

> *Software Clearing House, Inc. v. Intrak, Inc*., 66 Ohio App.3d 163, 170–71, 583
> N.E.2d 1056 (Ohio Ct. App. 1990); *Freeman Indus. Prods., L.L.C. v. Armor Metal
> Grp. Acquisitions, Inc*., 2011-Ohio-1995, ¶ 31, 193 Ohio App. 3d 438, 449, 952
> N.E.2d 543, 551. If these factors weigh in favor of the injured party, then the Court
> may find that the breaching party materially breached the amended contract.

*Id*.  The district court then carefully evaluated each of the above five factors, concluding that four of them weighed in YPA's favor.  *Id*. at * 3-4.  The district court therefore denied Tatonka's motion to dismiss YPA's breach of contract and material breach counterclaims.  *Id*. at * 4.

In the instant case, Plaintiffs summarily cite *Tatonka* but fail to acknowledge, address, or apply any of the five factors noted in that decision.  Indeed, Plaintiffs devote only one sentence to this argument in their Brief in Opposition, without any further development, discussion, or application of the five factors to the specific facts alleged in the Complaint herein.  It is well established that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997).  *See also Gradisher v. City of Akron*, 794 F.3d 574, 586 (6th Cir. 2015) (same).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson*, 125 F.3d at 995.  Here, the Court finds that, by failing to provide any meaningful discussion of this issue, Plaintiffs have waived their argument that Vision Management was excused from complying with the notice, inspection, and/or repair provisions of the Inspection Contract because Constant Aviation allegedly materially breached that Contract first.  The Court will not *sua sponte* consider and apply each of the five factors set forth in *Tatonka* to the allegations in the Complaint, nor will it craft arguments on Plaintiffs' behalf in this regard.  In light of Plaintiffs' failure to sufficiently raise this argument,  the Court declines to consider it herein.

Accordingly, and for all the reasons set forth herein, the Court grants Constant Aviation's Motion to Dismiss Plaintiffs' breach of contract claim (Count II).

**B.      Negligence/Gross Negligence (Count I)**

Constant Aviation also seeks dismissal of Plaintiffs' claim for "negligence/gross negligence." In Count I, Plaintiffs allege that Constant Aviation owed them "a common law duty, as well as a contractual duty, to use reasonable care while inspecting, maintaining, and repairing the aircraft at issue." (Doc. No. 1 at ¶ 22.) Plaintiffs allege that Constant Aviation breached its duty to Plaintiffs by doing the following:

a.      Failing to perform inspections and maintenance with the requisite skill and diligence expected of professional aviation service providers;

b.      Failing to identify corrosion and other latent defects during the initial inspection despite being specifically retained to ensure airworthiness;

c.      Neglecting to conduct critical industry-standard tests designed to identify latent corrosion issues in high-risk areas of the aircraft;

d.      Representing that the aircraft was free of material defects despite the presence of significant corrosion;

e.      Allowing the aircraft to be delivered in an unsafe and non-airworthy condition;

f.      Failing to adhere to FAA guidelines, industry standards, and contractual obligations;

g.      Recklessly and knowingly disregarding the safety implications of its inadequate inspections and repairs; and

h.      Failing to train or supervise its employees properly to carry out inspections and repairs in accordance with applicable standards.

(*Id*. at ¶ 23.) Plaintiffs allege that, as a direct and proximate result of the foregoing acts and omissions, Plaintiffs "have incurred substantial repair costs, operational disruptions, reputational harm, and lost business opportunities." (*Id*. at ¶ 25.) Lastly, Plaintiffs allege that the damages they suffered "were

24

directly and proximately caused by the negligence, carelessness, recklessness, gross negligence, and/or willful and wanton misconduct of Defendant." (*Id*. at ¶ 24.)

Constant Aviation argues that Plaintiffs' negligence claim fails because (1) it is duplicative of, and therefore precluded by, Plaintiffs' breach of contract claim; (2) Constant Aviation owed no duty to either Fiorillo or MakGab because neither of those Plaintiffs are parties to the Inspection Contract; and (3) it is barred by the economic loss doctrine. (Doc. No. 9 at PageID#s 181-184.) In response, Plaintiffs argue that their negligence claim is distinct from their breach of contract claim because the Complaint sufficiently alleges that Constant Aviation breached professional duties that exist independently of the Inspection Contract, including adherence to FAA regulations and industry maintenance standards. (Doc. No. 10 at PageID#s 193-195.) Plaintiffs also assert that they have sufficiently plead a claim for negligent misrepresentation, which they argue "may exist alongside breach of contract claims where the misrepresentation induced reliance outside the contract." (*Id*.) Lastly, Plaintiffs argue that the economic loss doctrine does not apply in cases involving "professional negligence" and/or allegations of property damage. (*Id.*)

In Reply, Constant Aviation argues that Plaintiffs have failed to allege any facts showing the existence of any duty owed separately from the Inspection Contract. (Doc. No. 11 at PageID#s 202-205.) Constant Aviation further asserts that Plaintiffs' professional negligence argument fails because "Plaintiffs have cited no case in which an aircraft inspection and maintenance company has been found to be the type of 'professional' to which a 'professional negligence' claim will apply." (*Id*.) And, even if it could be considered such a professional, Constant Aviation argues that Plaintiffs' claim nonetheless fails because they fail to allege any damages attributable to the alleged negligence that are different from the damages arising from the alleged breach of contract. (*Id*.)

The Court will address the parties' arguments with respect to Vision Management, and to MakGab and Fiorillo, separately, below.

### 1. Vision Management

As discussed above, Vision Management is the only one of the three Plaintiffs that is a party to the Inspection Contract and, therefore, the only Plaintiff herein that had standing to assert a breach of contract claim against Constant Aviation. Under Ohio law, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Continental Cas. Co*., 647 F.2d 705, 710 (6th Cir. 1981) (applying Ohio law). *See also Academic Imaging LLC v. Soterion Corp.,* 352 Fed. Appx. 59, 64 (6th Cir. 2009) (applying Ohio law); *DG Gas, LLC v. TA Franchise Systems, LLC*, 2025 WL 814928 at * 31 (N.D. Ohio March 14, 2025); *Stancik v. Deutsche Natl. Bank*, 2015 WL 3899224 at * 7 (Ohio App. 8th Dist. June 25, 2015); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co*., 684 N.E.2d 1261, 1270 (Ohio App. 9th Dist. 1996). More specifically, "Ohio law does not recognize a tort claim premised upon the same actions as those upon which the plaintiff bases a breach of contract claim unless the plaintiff identifies some duty or misrepresentation by the breaching party independent of the contract." *Bibbs v. Allstate Ins. Co.*, 2024 WL 4124171 at *8 (N.D. Ohio Sept. 9, 2024). *See also Academic Imaging LLC,* 352 Fed. Appx. at 64-65 ("To be cognizable, a tort claim must allege a breach 'of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation.'") (quoting *Cuthbert v. Trucklease Corp*., 2004 WL 1879023 at * 10 (Ohio App. 10th Dist. Aug. 24, 2004)); *Little Mountain Precision, LLC v. DR Guns, LLC*, 2023 WL 1816711 at *6 (N.D. Ohio Feb. 8, 2023) ("A tort claim based upon the same actions as those upon which a claim of contract is based

will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract.")

Moreover, where the causes of action in tort and contract are "factually intertwined," a plaintiff must show that the tort claims derive from the breach of duties that are independent of the contract and that would exist notwithstanding the contract. *Stancik,* 2015 WL 3899224 at * 7. "To hold otherwise would be to convert every unfulfilled contractual promise, i.e., every alleged breach of contract, into a tort claim." *Telxon Corporation v. Smart Media of Delaware, Inc*., 2005 WL 2292800 at * 13 (Ohio App. 9th Dist. Sept. 21, 2005). *See also Little Mountain Precision, LLC v. DR Guns, LLC,* 2023 WL 1816711 at *6. A separate duty will arise in special relationships, such as between an insurer and its insured. *Battista v. Lebanon Trotting Ass'n,* 538 F.2d 111, 117-18 (6th Cir. 1976). "If a separate duty does not exist, the tort-based claim will not lie." *Little Mountain Precision, LLC*, 2023 WL 1816711 at * 6.

Here, Plaintiffs argue that Constant Aviation owed Vision Management such a separate duty. Specifically, Plaintiffs argue that Constant Aviation "owed a duty of care in performing aircraft inspections and repairs, independent of its contractual obligations." (Doc. No. 10 at PageID# 193.) In support of this argument, Plaintiffs first cite a purported Sixth Circuit case, "*Onyx Enters. Int'l Corp. v. Sloan*, 843 F. App'x 859, 867 (6th Cir. 2021)," for the proposition that "a duty in tort may arise separately from contractual obligations where professional services are involved." (*Id*.) Despite many attempts, however, the Court was unable to locate this alleged Sixth Circuit case, either by

name[11] or by the Fed. Appx citation provided by Plaintiffs in their Brief in Opposition.[12] Thus, the Court will disregard this citation.

Plaintiffs next argue that they have sufficiently alleged that Constant Aviation performed improper inspections of the aircraft at issue "contrary to industry protocol and standard," and that these allegations "establish that Defendant's failures extended beyond mere breaches of contract and into the realm of professional negligence." (Doc. No. 10 at PageID# 193.) Plaintiffs cite the following four cases in support of this argument: (1) *LifeTime Fitness, Inc. v. Chagrin Valley Eng'g Ltd.,* 2014 WL 6879082 (N.D. Ohio Dec. 4, 2014); (2) *Cromer v. Children's Hosp. Med. Ctr. of Akron,* 29 N.E.3d 921 (Ohio 2015); (3) *Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212 (Ohio 1982); and (4) *Corporex Dev. & Construction Mgmt., Inv. v. Shook, Inc.*, 835 N.E.2d 701 (Ohio 2005). While the above cases do, in fact, exist, the Court agrees with Constant Aviation that they do not support Plaintiffs' argument. Notably, none of the cases cited by Plaintiffs involve an aircraft inspection and maintenance company or otherwise hold that an aircraft inspection and maintenance company such as Constant Aviation constitutes the type of "professional" to which a

---

[11] The Court notes that a search of the case name "*Onyx Enters. Int'l Corp. v. Sloan"* brings up two unreported decisions in the United States District Court for the District of Colorado and one unreported decision in the United States District Court for the Southern District of Florida. *See Onyx Enters. Int'l Corp. v. Sloan International Holdings Corp*., 2020 WL 1958414 (D. Colo. March 26, 2020); *Onyx Enters. Int'l Corp. v. Sloan International Holdings Corp*., 2020 WL 1955398 (D. Colo. April 23, 2020); and *Onyx Enters. Int'l Corp. v. Sloan International Holdings Corp*., 2020 WL 9172668 (S.D. Fla. July 29, 2020). None of these cases relate in any way to the circumstances in which a duty in tort may arise separately from contractual obligations.

[12] The Court hereby reminds counsel for Plaintiffs of her responsibilities under Fed. R. Civ. P. 11, as well as her ethical obligations and duty of candor as an officer of the Court. *See, e.g., Park v. Kim*, 91 F.4th 610, 615 (2nd Cir. 2024) (finding that "[a]t the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely."); *Wadsworth v. Walmart, Inc*., 348 F.R.D. 489, 495 (D. Wyo. 2025) (finding that "using a fake opinion to support an argument is a violation of Rule 11(b)(2)" ); *Mavy v. Comm'r of Soc. Sec*., 2025 WL 2355222 at * 6 (D. Az. Aug. 14, 2025) (finding that, "[b]y repeatedly citing this Court to non-existent 'cases' and to actual cases that did not support the propositions for which they were cited," counsel's conduct "squarely [ran] afoul of Rule 11's mandate").

"professional negligence" claim could apply.  *See LifeTime Fitness*, Inc., 2014 WL 6879082 at * 4 (involving a "design professional" that prepared a design of a parking lot); *Cromer*, 29 N.E.3d at 929 (finding that the relationship between medical professionals and their patients "can establish the existence of an actor's duty to another person");  *Haddon View Inv. Co.*, 436 N.E.2d  at 215 (holding that "an accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen"); *Corporex,* 835 N.E.2d at 413 (finding that the economic loss rule bars a building project owner from recovery of purely economic damages in tort against a subcontractor).

Moreover, while the Complaint does allege that Constant Aviation "failed to adhere to Federal Aviation Administration ('FAA') standards and guidelines," Plaintiffs fail to sufficiently allege or explain how this alleged "breach of [Constant Aviation's] professional duties" encompasses any duties separate from, or independent of, the parties' contractual relationship.  Indeed, in their breach of contract claim (Count II), Plaintiffs allege that the Inspection Contract "obligated Defendant to perform its services in accordance with agreed-upon terms and *industry standards*;" and that Constant Aviation breached the Inspection Contract by, among other things, "failing to adhere to the required *industry standards*." (Doc. No. 1 at ¶¶ 27, 29) (emphasis added).  Plaintiffs further blur the boundary between their negligence and breach of contract claims, by alleging in their negligence claim (Count I) that Constant Aviation "breached its duty to Plaintiffs by *** (f) Failing to adhere to FAA guidelines, industry standards*, and contractual obligations*." (*Id*. at ¶ 23(f)) (emphasis added).  In sum, the Court finds that Plaintiffs have failed to sufficiently allege or demonstrate the existence of a separate duty that is independent from the Inspection Contract and that would "exist notwithstanding the contract." *Stancik*, 2015 WL 3899224 at * 7.  Rather, any duties owed by

29

Constant Aviation to Vision Management "arose incident to the[ir] contractual relationship."  *Ross v. PennyMac Loan Services LLC*, 761 Fed. Appx. 491, 496 (6th Cir. 2019).  For this reason alone, the Court finds that Vision Management's negligence claim necessarily fails as a matter of law.  *See also Stancik*, 2015 WL 3899224 at * 7.

The Court further finds that Vision Management's negligence claim fails for the additional reason that Plaintiffs have failed to allege damages attributable to Constant Aviation's alleged negligent conduct that are separate and distinct from damages attributable to its alleged breach of contract.  Ohio courts have long held that "[i]n addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract."  *Textron Fin. Corp.*, 684 N.E.2d at 1271 (emphasis in original.).  *See also Academic Imaging, LLC*, 352 Fed. Appx. at 67-68 (same); *LifeTime Fitness, Inc.*, 2014 WL 6879082 at * 4 (same).  Here,  Plaintiffs do not argue or otherwise explain how their alleged negligence damages are different from or in addition to their alleged breach of contract damages.  Upon review, the Court agrees with Constant Aviation that Plaintiffs' alleged damages relating to their negligence claim are, in fact, indistinguishable from their alleged damages relating to their breach of contract claim.[13]

---

[13] Specifically, regarding their negligence claim, Plaintiffs allege that they "incurred repair costs, operational disruptions, reputational harm, and lost opportunities," including "substantial expenses totaling $176,501.43 for repairs and inspections necessary to remediate the corrosion and an additional $123,000.00 for operational disruptions caused by Defendant's negligence."  (Doc. No. 1 at ¶¶ 12, 25.)  Regarding the breach of contract claim, Plaintiffs similarly allege that they suffered damages in the amount of $176,501.43 for repair and inspection costs and "[o]perational disruptions and the resulting loss of business opportunities, totaling $123,000.00," as well as "[a]dditional costs incurred in obtaining substitute aircraft services during the remediation period" and attorney fees and costs.  (*Id*. at ¶ 30.)

Lastly, the Court rejects Plaintiffs' argument that they have asserted a claim for negligent misrepresentation and, thus, their negligence claim is not "merely duplicative" of their contract claim. (Doc. No. 10 at PageID# 193.)  Plaintiffs cite Paragraphs 9 and 12 of the Complaint in support of their argument that they "properly assert that Defendant misrepresented its ability to properly inspect and repair the aircraft, further supporting a claim for negligence." (*Id*.)  These Paragraphs provide as follows:

> 9.   Plaintiffs paid for pre-purchase evaluations and subsequent inspection services totaling $94,315.44
>
> **
>
> 12.   Plaintiffs incurred substantial expenses totaling $176,501.43 for repairs and inspections necessary to remediate the corrosion and an additional $123,000 for operational disruptions caused by Defendant's negligence.

(Doc. No. 1 at ¶¶ 9, 12.)  Even construing the above Paragraphs in a light most favorable to Plaintiffs, it is clear that they do not "assert that Defendant misrepresented its ability to properly inspect and repair the aircraft." (Doc. No. 10 at PageID# 193.)

Although not cited by Plaintiffs, the Court notes that, in Count I, Plaintiffs allege (among other things) that Constant Aviation was negligent because it "represent[ed] that the aircraft was free of material defects despite the presence of significant corrosion." (Doc. No. 1 at ¶ 23(d)).  Neither party cites or addresses this particular allegation.  Upon careful review, the Court construes this allegation as alleging that this misrepresentation occurred *after* Constant Aviation had already performed the agreed-upon inspection and repair services set forth in the Inspection Contract.  As such, the Court finds that it is duplicative of Plaintiff's claim that Defendant breached the contract by failing to "deliver the contracted-for services free of defects" and "notify the Plaintiff of any defects." (Doc. No. 1 at ¶ 29.)  In other words, the Court finds that Constant Aviation's duty to accurately

31

represent whether the aircraft was free of defects is a contractual duty – not a separate or independent duty apart from the Inspection Contract.  *See, e.g., Textron Fin. Corp.,* 684 N.E.2d at 1271 ("Whether intentionally or not, Nationwide failed to disclose the true location of Textron's 200E computer and, in fact, represented a location which was, if not initially, then ultimately, incorrect.  However, the duty to obtain Textron's consent to a change in the computer's location was contractual. Textron did not establish a duty additional to that which was contractual.")  Moreover, and as discussed above, Plaintiffs have not alleged damages separately attributable to Constant Aviation's alleged negligent misrepresentation that are distinguishable from those damages that it claims are attributable to Constant Aviation's alleged breach of contract.

Accordingly, and for all the reasons set forth above, the Court finds that Vision Management's negligence claim necessarily fails as a matter of law.[14]  *See also Stancik*, 2015 WL 3899224 at * 7.

## 2.  MakGab and Fiorillo

As discussed *supra*, unlike Vision Management, MakGab and Fiorillo are not parties to the Inspection Contract.  Constant Aviation argues that MakGab and Fiorillo's negligence claim should nonetheless be dismissed because "in the absence of a contract to provide any goods or services to Fiorillo or MakGab, Constant owed them no duty."  (Doc. No. 9 at PageID# 182.)  Specifically, Constant Aviation asserts that the existence of a duty depends on the foreseeability of the injury.  (*Id.*)  Because neither MakGab nor Fiorillo are parties to the Inspection Contract, Constant Aviation argues that it "obviously would not foresee any injury to [them]."  (*Id.*)  Lastly, Constant Aviation argues

---

[14] In light of the above, the Court need not (and does not) address Constant Aviation's argument that Plaintiffs' negligence claims are barred by the economic loss doctrine.

that MakGab's and Fiorillo's negligence is also barred by the economic loss doctrine because Plaintiffs "have alleged solely economic damages."  (*Id*. at PageID# 183.)

In their Brief in Opposition, Plaintiffs do not acknowledge or address Constant Aviation's argument that MakGab's and Fiorillo's negligence claim should be dismissed because they are not signatories to the Inspection Contract and, therefore, it was not foreseeable that they would be injured by Constant Aviation's alleged breach.  (Doc. No. 10 at PageID# 194.)  Rather, Plaintiffs maintain that Constant Aviation owed all of the Plaintiffs (including MakGab and Fiorillo) a duty separate and apart from the Inspection Contract because "professionals providing specialized services, such as aviation maintenance, are required to exercise reasonable care in their work."  (*Id*.)

As discussed at length above, however, the Court has found that Plaintiffs have failed to cite any authority indicating that an aircraft inspection and maintenance company such as Constant Aviation constitutes the type of "professional" to which a "professional negligence" claim could apply.  The Court has further found that Plaintiffs have failed to sufficiently allege or explain how Constant Aviation's alleged breach of its "professional duties" encompasses any duties separate from, or independent of, the Inspection Contract that was entered into between Vision Management and Constant Aviation.  In addition, by failing to acknowledge or address the issue, Plaintiffs concede that it was not foreseeable that MakGab and Fiorillo would be injured by Constant Aviation's alleged breach of the Inspection Contract, as neither of those Plaintiffs are parties to that Contract.  Under these circumstances, the Court finds that Constant Aviation is entitled to dismissal of Plaintiffs MakGab's and Fiorillo's negligence claim.  *See e.g., Corporex*, 835 N.E.2d at 415 ("Because the underlying duties are created by a contract to which DSI is not a party, no tort action lies in DSI's favor.").

33

Accordingly, and for all the reasons discussed above, Count I is dismissed.

**C.    Unjust Enrichment (Count III)**

In Count Three, Plaintiffs allege that they "conferred a substantial benefit on Defendant by paying for inspection and repair services that were negligently performed, recklessly performed, and/or not performed to the required standard." (Doc. No. 1 at ¶ 32.)  Plaintiffs further allege that Defendant had knowledge of Plaintiffs' payments to Defendant and that "Defendant's retention of these payments without providing Plaintiffs the contracted-for services would be unjust." (*Id.* at ¶ 33.)  Plaintiffs allege that they are therefore "entitled to restitution of the amounts paid to Defendant under the principles of equity and fairness." (*Id*. at ¶ 35.)

In its Motion, Constant Aviation argues that Plaintiffs' unjust enrichment claim should be dismissed because "Plaintiffs are not permitted to seek relief under quasi-contract where an express contract governs the same matter." (Doc. No. 9 at PageID# 187.)  Constant Aviation asserts that "there can be little dispute that the subject matter of Plaintiffs' Complaint is governed by an express contract" and, therefore, "their unjust enrichment claim fails as a matter of law." (*Id.*)  Plaintiffs do not acknowledge or address Constant Aviation's arguments in their Brief in Opposition. (Doc. No. 10.)

It is well established that, if a plaintiff fails to respond or to otherwise oppose a defendant's motion to dismiss, a district court may deem the plaintiff to have waived opposition. *See, e.g., Humphrey v. U.S. Attorney Gen.'s Office*, 279 Fed. Appx 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived). *See also Kuhlman v. City of Cleveland*, 2023 WL 2652585 at * 11 (N.D. Ohio March 23, 2023) (finding that, by failing to respond

34

to defendant's motion to dismiss, plaintiff "waived any argument in opposition to the City's argument that plaintiff's state law claims are barred"); *Selou v. Integrity Sol. Servs., Inc*., 2016 WL 612756 at *3 (E.D. Mich. Feb. 16, 2016) ("Plaintiff's failure to address any claim but her TCPA claim in response to LiveVox's motion to dismiss is cause for dismissing those claims.").

Here, despite having every opportunity to respond to Constant Aviation's argument that Plaintiffs' unjust enrichment claim is subject to dismissal, Plaintiffs failed to do so.  The Court, therefore, deems Plaintiffs to have waived any opposition with respect to this issue.  Accordingly, the Court grants Constant Aviation's Motion to Dismiss unjust enrichment claim in Count III.

### D.  Request to Amend

Lastly, in the final paragraph of their Brief in Opposition, Plaintiffs state, summarily, that "should the Court find any portion of the Complaint deficient, Plaintiffs request leave to cure any perceived deficiencies."  (Doc. No. 10 at PageID# 199.)  Plaintiffs do not provide any further explanation regarding why they believe leave to amend should be granted or what additional factual allegations they would include in any proposed amended complaint to cure the deficiencies in the original Complaint.  Nor do Plaintiffs attach a copy of any proposed amended complaint to their Brief in Opposition.

Plaintiffs' request for leave to amend is denied.  Under Rule 15, Plaintiffs had twenty-one (21) days after the filing of Constant Aviation's Motion to Dismiss to amend their Complaint as a matter of course.  *See* Fed. R. Civ. P. 15(a)(1)(B).  Plaintiffs failed to do so.  Rather, they elected to wait for this Court to rule on Constant Aviation's Motion and only seek amendment (via a cursory, one-sentence request) in the event that the Court determined "any portion of the Complaint [to be] deficient."  (Doc. No. 10 at PageID# 199.)  But, as the Sixth Circuit has explained, "Plaintiffs [are]

35

not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 214 F.3d 776, 784 (6th Cir. 2010).

Rather, to properly seek leave to amend, Plaintiffs were required to do more than simply include a perfunctory, unexplained request for leave to amend in the last paragraph of their Brief in Opposition. They were required to file a fully briefed and supported motion to amend or, at the very least, provide this Court with a proposed amended complaint accompanied by an explanation of how the amended complaint would resolve the deficiencies in the original Complaint. *See Salazar v. Paramount Glob.*, 133 F.4th 642, 653 (6th Cir. 2025) ("Salazar filed neither a motion to amend nor a proposed amended complaint. Instead, he requested leave to amend his complaint only in a single cursory footnote at the end of his response to Paramount's motion to dismiss *** This 'cursory request' did not 'explain how a second amended complaint would resolve the problems in the first.' So the district court did not abuse its discretion in dismissing Salazar's complaint with prejudice.) (quoting *Crosby v. Twitter, Inc.,* 921 F.3d 617, 628 (6th Cir. 2019)) (internal citations omitted).

Just as in *Salazar*, Plaintiffs herein did not file a separate motion to amend their Complaint or provide this Court with a proposed amended complaint along with an explanation of how the amended complaint would resolve the problems in the original Complaint. Accordingly, Plaintiffs' barebones request for leave to amend is denied.

## V.     Conclusion

Accordingly, and for all the reasons set forth herein, Defendant Constant Aviation LLC's Motion to Dismiss (Doc. No. 9) is GRANTED. Plaintiffs' request for leave to amend is DENIED.

**IT IS SO ORDERED.**

    *s/Pamela A. Barker*
PAMELA A. BARKER

Date:  September 22, 2025          U. S. DISTRICT JUDGE

37